UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CHRISTOPHER J. WOOD,

       Petitioner,

v.                                  CASE NO. 6:14-cv-1072-Orl-37KRS

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

       Respondents.
_____

## ORDER

THIS CAUSE is before the Court on Petitioner Christopher J. Wood's Petition for Writ of

Habeas Corpus ("Petition," Doc. 1) pursuant to 28 U.S.C. § 2254. Respondents filed a Second

Supplemental Response to the Petition (Doc. 37). Petitioner filed a Reply to the Second

Supplemental Response to Petition (Doc. 38).

Petitioner asserts thirty-one grounds for relief.[1] For the following reasons, the Petition is

denied.

## I.      PROCEDURAL HISTORY

Petitioner was charged by second amended information with kidnapping (Count One),

aggravated battery (Count Two), and six counts of sexual battery by use of great force (Counts

Three through Eight). (Doc. 15-1 at 11). A jury found Petitioner guilty as charged as to Counts

One, Four, and Five and guilty of the lesser included offense of felony battery as to Count Two

---

[1] Petitioner asserts nineteen subparts in ground one, five subparts in ground two, and four subparts in ground five. Petitioner also raised an additional ground of newly discovered evidence in his Reply to the Second Supplemental Response to Petition. The Court will address each subpart as a separate ground for relief.

and sexual battery as to Counts Three, Six, Seven, and Eight. (Doc. 15-23 at 44-51). The state court sentenced Petitioner to a thirty-year term of imprisonment for Count One, a five-year term of imprisonment for Count Two, 51.75-year terms of imprisonment for Counts Four and Five, and fifteen-year terms of imprisonment for Counts Three, Six, Seven and Eight with all sentences to run concurrently. (Doc. 15-2 at 50-54). Petitioner appealed, and on August 5, 2008, the Fifth District Court of Appeal of Florida ("Fifth DCA") affirmed *per curiam.* (Doc. 15-2 at 94).

On September 21, 2008, Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure. (Doc. 15-2 at 99). The state court denied the motion. (Doc. 15-4 at 52-67). Petitioner appealed, and the Fifth DCA affirmed *per curiam*. (Doc. 15-7 at 49). Mandate issued on July 9, 2009. (*Id.* at 53).

On May 20, 2010, Petitioner filed a state habeas petition. (Doc. 15-7 at 56). The Fifth DCA denied the petition. (Doc. 15-10 at 39). Petitioner filed a motion for rehearing, which was denied on September 17, 2010. (*Id*. at 41).

On August 18, 2010, Petitioner filed a second Rule 3.850 motion. (Doc. 15-11 at 22). The state court denied the motion as successive. (Doc. 15-14 at 60-65). Petitioner appealed but later filed a notice of voluntary dismissal. The Fifth DCA dismissed the appeal on April 17, 2012. (Doc. 15-15 at 77).

Petitioner filed a third Rule 3.850 motion. The state court dismissed based on lack of jurisdiction. (Doc. 15-29 at 32-33). Petitioner appealed, and the Fifth DCA affirmed *per curiam*. (*Id*. at 36). Mandate issued on March 2, 2012. (*Id*. at 35).

On January 5, 2012, Petitioner filed a fourth Rule 3.850 motion. (Doc. Nos. 15-18 at 81-99; 15-19 at 1-42). The state court denied the motion on April 23, 2012. (Doc. 15-19 at 51-54). Petitioner appealed. (Doc. 15-19 at 80). The Fifth DCA affirmed *per curiam*. (*Id*. at 83). Mandate

issued on August 24, 2012. (*Id.* at 85).

On July 11, 2012, Petitioner filed a motion for return of property and a fifth Rule 3.850 motion. (Doc. Nos. 15-19 at 87; 15-20 at 1-36, 82-93; 15-21 at 1-36). On July 22, 2013, the state court denied both motions. (Doc. Nos. 15-20 at 47-51; 15-23 at 17-39). Petitioner appealed the denial of the motion for return of property. (Doc. 15-20 at 59-63). The Fifth DCA affirmed *per curiam.* (Doc. 15-20 at 76). Petitioner filed a motion for rehearing in which he raised arguments concerning his motion for return of property and his fifth Rule 3.850 motion. (Doc. 28-1 at 83-85). The Fifth DCA denied the motion. (Doc. 15-20 at 78). Mandate issued on July 15, 2014. (*Id.* at 80).

## II.    LEGAL STANDARDS

### A.    Standard Of Review Under The Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the Supreme Court of the United States "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).

The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

### B.        Standard For Ineffective Assistance Of Counsel

The Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[2] *Id*. at 687-88. A court must adhere to a strong presumption

---

[2]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the Supreme Court of the United States clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient

that counsel's conduct falls within the wide range of reasonable professional assistance.  *Id*. at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

### C.    Exhaustion and Procedural Default

One procedural requirement precludes federal courts, absent exceptional circumstances, from granting habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-43 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). Specifically, 28 U.S.C. § 2254 provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

_____

representation rendered the result of the trial fundamentally unfair or unreliable.

(A)      the applicant has exhausted the remedies available in the courts of the State; or

(B)     (i)   there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). Thus, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)*, holding modified by Martinez v. Ryan*, 566 U.S. 1 (2012). In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court. *Id.* at 735 n.1 (stating that if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

In order to satisfy the exhaustion requirement, a state petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard*, 404 U.S. at 275-76) (internal quotation marks omitted). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. *Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998). Furthermore, "[i]n Florida, exhaustion usually requires not only the filing of a Rule 3.850 motion, but an appeal from its denial." *Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979) (citing *Lee v. Wainwright*, 468 F.2d 809, 810 (5th Cir. 1972)).

Procedural default will be excused in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default

and actual "prejudice" resulting from the default. "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). "[E]xternal impediments include evidence that could not reasonably have been discovered in time to comply with the rule; interference by state officials that made compliance impossible; and ineffective assistance of counsel at a stage where the petitioner had a right to counsel." *Mize v. Hall*, 532 F.3d 1184, 1190 (11th Cir. 2008) (citing *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)). To establish "prejudice" so as to warrant review of a procedurally defaulted claim, a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003) (citations omitted).

The second exception, known as the "fundamental miscarriage of justice," only occurs in an extraordinary case, in which a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, "'[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324).

### III.   ANALYSIS

**A.   Ground One**

**i.   Subpart A**

Petitioner asserts counsel rendered ineffective assistance by failing to notify the trial court that a juror was sleeping during the testimony of a witness. (Doc. 1 at 6). According to Petitioner, he told counsel about the juror. (*Id.*). However, Petitioner does not know what portion of the trial through which the juror slept, although he believes it was during the direct testimony of the victim, who was his wife. (*Id.*).

Petitioner raised this ground in his first Rule 3.850 motion. The state court denied relief pursuant to *Strickland*. (Doc. 15-14 at 73). The state court noted that Petitioner asserted that the juror fell asleep for approximately five minutes, but the trial lasted for four days. (*Id.*). The state court reasoned that the victim testified at length twice and Petitioner did not specify what testimony the juror missed. (*Id.*). The state court concluded that prejudice did not result. (*Id.*).

Petitioner has not established that the state court's denial of this ground is contrary to, or an unreasonable application of, *Strickland*. Multiple witnesses were called during the four-day trial. The victim testified at length during both the prosecution and defense's case, and she was thoroughly cross-examined by the defense. (Doc. 28-2 at 48-151, 272-317). In addition, the jury saw the one and one-half hour video made by Petitioner, which he maintained was a rape/torture pornographic movie that he and the victim agreed to make, that showed him committing the offenses. Assuming that a juror fell asleep during five minutes of the victim's testimony, a reasonable probability does not exist that the outcome of the trial would have been different had counsel notified the trial court about the juror. Accordingly, ground one is denied pursuant to § 2254(d).

### ii.     Subpart (b)

Petitioner contends counsel rendered ineffective assistance by failing to impeach his wife's mother, Vanera Rodgers. (Doc. 1 at 7). Specifically, Petitioner complains that counsel failed to elicit that his wife's mother did not like him because he came from a poor family and did not have sufficient money. (*Id*). Petitioner notes that his wife's mother testified in her deposition that she and her husband offered to help their daughter leave Petitioner. (*Id.*).

Petitioner raised this ground in his first Rule 3.850 motion. The state court denied relief pursuant to *Strickland*. (Doc. 15-14 at 73-74). The state court reasoned that most of Vanera Rodgers' testimony was corroborated by Deputy Robert Tabaczynski and she admitted on cross-examination that she did not like Petitioner. (*Id*. at 74). The state court concluded that prejudice did not result because the jury heard that Vanera Rodgers was biased against Petitioner and her testimony was largely corroborated by other witnesses. (*Id*.).

Petitioner has not established that the state court's denial of this ground is contrary to, or an unreasonable application of, *Strickland*. Vanera Rodgers admitted on cross-examination that she did not like Petitioner. (Doc. 28-2 at 254). Furthermore, her testimony largely related to the victim's appearance and demeanor after the offenses and was corroborated by Deputy Tabaczynski's testimony. *See* Doc. 28-2 at 177-79, 241-45, 247. Consequently, prejudice did not result from counsel's failure to further question Vanera Rodgers about her bias against Petitioner. Accordingly, ground two is denied pursuant to § 2254(d).

### iii.     Subpart c

Petitioner maintains counsel rendered ineffective assistance by failing to impeach his wife's father, William Rodgers, to show he was biased against Petitioner. (Doc. 1 at 8). Petitioner further contends that counsel failed to elicit from William Rodgers that Petitioner helped him cut

a tree the morning of the offenses. (*Id.*). According to Petitioner, this testimony would have refuted the victim's testimony that Petitioner had time to take the video equipment and props by himself to the scene of the offenses. (*Id.*).

Petitioner raised this ground in his first Rule 3.850 motion. The state court denied relief pursuant to *Strickland*. (Doc. 15-14 at 74-75). The state court reasoned that most of William Rodgers' testimony was corroborated by Deputy Tabaczynski's testimony and William Rodgers admitted on cross-examination that he did not like Petitioner. (*Id.* at 74). The state court further reasoned that Petitioner testified that he helped William Rodgers cut down a tree the morning of the incident, Petitioner's timeline coincided with the victim's timeline, and Petitioner testified that he and his wife got the props and equipment together the morning of the offenses, but he had found the location to film the video at a nearby canal several days before the offenses. (*Id.* at 75). The state court concluded that counsel had no reason to elicit evidence to contradict the victim's timeline because it did not conflict with Petitioner's timeline. (*Id.*).

Petitioner has not established that the state court's denial of this ground is contrary to, or an unreasonable application of, *Strickland*. William Rodgers admitted on cross-examination that he never liked Petitioner, and his testimony was substantially corroborated by Deputy Tabaczynski's testimony. (Doc. 28-2 at 162). Furthermore, the victim testified that Petitioner helped her father cut down a tree before Petitioner went to the canal on the date of the offenses and that she met him at 2:00 P.M. at the canal. (*Id.* at 110-11). Consistent with the victim's testimony, Petitioner testified that he helped William Rodgers cut down a tree around 9:15 A.M. and was home by 11:30 A.M. on the morning of the incident. (*Id.* at 339-40). Petitioner also testified that he left the house around 12:30, got to the canal around 1:15, and met his wife at the canal around 2:30. (*Id.* at 345-46). Petitioner further testified that he found the location where he

and the victim intended to make the video a few days before the offenses occurred. (*Id.* at 335-36). The victim's testimony regarding the events leading up to the offenses was largely consistent with Petitioner's testimony. Therefore, a reasonable probability does not exist that the outcome of the trial would have been different had counsel questioned William Rodgers regarding whether Petitioner helped him cut down a tree before the offenses occurred. Accordingly, this ground is denied pursuant to § 2254(d).

### iv. Subpart d

Petitioner asserts counsel rendered ineffective assistance by failing to impeach the victim. (Doc. 1 at 9-10). In support of this ground, Petitioner argues counsel should have elicited testimony that the victim's parents offered her money to leave him and she was afraid Petitioner would get custody of the children.[3] (*Id.*). Petitioner maintains that this would have demonstrated that the victim had a motive to fabricate the charges against him in order to obtain their property and custody of the children. (*Id.*)

Petitioner raised this ground in his first Rule 3.850 motion. The state court denied relief pursuant to *Strickland*. (Doc. 15-14 at 75-76). The state court noted that counsel attempted to challenge the victim's credibility by questioning her regarding her fear of losing custody of the children if she divorced Petitioner. (*Id.* at 75). The state court further noted that after counsel proffered questions concerning the couple's history, past domestic violence, and threats to take the children, the trial court warned counsel that further inquiry would open the door to uncharged crimes and result in a mistrial. (*Id.*). The state court concluded that counsel made a reasonable

---

[3] Petitioner further notes that counsel should have called Dennis and Sharon Pogar to testify. (Doc. 1 at 10). This ground will be addressed *infra* in subpart q.

decision not to ask further questions because the jury had essentially heard about the victim's concerns and asking further questions would risk a mistrial. (*Id.*).

Petitioner has not established that the state court's denial of this ground is contrary to, or an unreasonable application of, *Strickland*. The victim admitted that Petitioner had threatened to take the children in the past. (Doc. 28-2 at 290, 296-97). Thereafter, counsel proffered additional questions to the victim regarding divorce and custody of the children to demonstrate the victim's motive to fabricate her story. (*Id.* at 300-04). The trial court indicated counsel was allowed to further question the victim on the issue but noted such questioning could open the door to other matters which could result in a mistrial. (*Id.* at 304). Counsel then decided not to question the victim further on the issue because the jury had already heard testimony about the matter. (*Id.*). Counsel's decision not to ask additional questions regarding these issues was reasonable given that the victim admitted Petitioner had threatened to take the children in the past and that further questioning could have resulted in a mistrial. Counsel, therefore, was not deficient. In addition, a reasonable probability does not exist that the outcome of the trial would have been different had counsel further questioned the victim in light of the evidence against Petitioner, which included a video of the offenses. Accordingly, this ground is denied pursuant to § 2254(d).

### v. Subpart e

Petitioner maintains counsel rendered ineffective assistance by failing to know the proper procedure to impeach a witness with her prior statement. (Doc. 1 at 10). Petitioner raised this ground in his first Rule 3.850 motion. The state court denied relief pursuant to *Strickland*. (Doc. 15-14 at 76). The state court concluded that Petitioner failed to demonstrate prejudice resulted from counsel's performance. (*Id.*).

Petitioner has not established that the state court's denial of this ground is contrary to, or an unreasonable application of, *Strickland*. Although counsel did not understand the proper procedure to impeach a witness with a prior inconsistent statement, Petitioner has not established that a reasonable probability exists that the outcome of the trial would have been different had counsel known the proper procedure. As discussed more fully *infra* in ground one, subpart f, Petitioner has not demonstrated a reasonable probability exists that further impeachment of the witnesses would have resulted in a different outcome. Accordingly, this ground is denied pursuant to § 2254(d).

### vi.    Subpart f

Petitioner asserts counsel rendered ineffective assistance by failing to impeach his wife with her prior inconsistent statements. (Doc. 1 at 11). Specifically, Petitioner contends *inter alia* that counsel should have impeached the victim with her prior statements concerning (1) when she made arrangements with her mother to watch the children, (2) whether she drank a beer prior to the offenses and how long it took them to walk to the site of the offenses, (3) whether she brought anything from her vehicle to the canoe, (4) whether Petitioner said they should leave the stuff at the site of the offenses, and (5) whether Petitioner tortured her in order to get her to lie to her parents regarding why they were late. (*Id.* at 11-14). Petitioner also complains *inter alia* that counsel should have used the video to impeach his wife's testimony that (1) her toes barely touched the ground during the offenses, (2) she was able to get the knife that was inserted into her vagina to fall out while tied to the tree, (3) four golf balls versus two golf balls were inserted into her vagina, (4) it was Petitioner's idea to say they were scouting the location as a possible camping destination to take the children if anyone asked why they were there, and (5) she did not say on the video that they have to successfully make the movie and they should celebrate at home. (*Id.* at

11-16). Additionally, Petitioner contends counsel should have (1) impeached the victim regarding her drama experience, (2) shown that the victim's handwriting was on the tape, and (3) impeached the victim's statements using letters to Petitioner regarding their property and the foreclosure of their home. (*Id*. at 15-16).

Petitioner raised most of this ground in his first Rule 3.850 motion. The state court denied relief pursuant to *Strickland*. (Doc. 15-14 at 76-77). The state court recognized that there were some discrepancies in the victim's trial testimony, her deposition, and the video. (*Id*. at 76). Nevertheless, the state court reasoned that the victim's testimony was overall consistent and that Petitioner had not demonstrated that the minor inconsistencies would have undermined her credibility. (*Id*.). The state court further reasoned that the jury was able to consider her trial testimony in light of the videotape. (*Id*. at 76-77). The state court noted Petitioner failed to allege that he told his attorney prior to trial that the victim had theatrical experience from high school. (*Id*. at 77). The state court concluded Petitioner failed to demonstrate that the outcome of the proceeding would have been different but for counsel's performance. (*Id*. at 76).

Petitioner did not argue in the state court that counsel rendered ineffective assistance by failing to show that the victim's handwriting was on the video or by failing to impeach her with letters she wrote to Petitioner. Petitioner has not demonstrated an exception to the procedural default bar to overcome his failure to exhaust this portion of subpart f. Therefore, this portion of subpart f is procedurally barred from review. Alternatively, it is without merit. Petitioner has not established that the victim's handwriting was in fact on the video. Even if it was, however, this would not have impeached her credibility given that the camera was the family video camera. Finally, Petitioner has not demonstrated that (1) the victim wrote letters to him regarding their property and the foreclosure of their house or that any purported statements in the letters were

untruthful, (2) such evidence was admissible, and (3) that prejudice resulted from counsel's failure to introduce this evidence.

Petitioner has not established that the state court's denial of this ground is contrary to, or an unreasonable application of, *Strickland*. Although Petitioner notes some discrepancies in the victim's trial testimony and prior statements, these discrepancies are minor and many relate to largely collateral issues. With respect to counsel's failure to impeach the victim with the video, the jury watched the video during the trial. Therefore, the jury had the opportunity to discern any of the purported inconsistencies between the victim's testimony and her statements in the video. Moreover, the victim admitted that she took a drama class in college. (Doc. 28-2 at 315). To the extent the victim may have been in the drama club or the Thespian Society in high school, this does not necessarily equate to having television production experience as asserted by Petitioner. *See* Doc. 1 at 15. Assuming, however, that the victim did have such experience, the victim's credibility would not have been sufficiently undermined to result in a reasonable probability that the outcome of the trial would have been different had counsel presented such evidence.

In sum, the jury had the opportunity to consider the video of the incident and determine the credibility of the victim's testimony in light of the video. For instance, consistent with the victim's testimony that Petitioner lured her to the site by telling her he needed help getting a boat motor, the prosecutor noted that the victim referenced the boat motor in the video. (Doc. 28-3 at 117-18). Additionally, despite the fact that Petitioner contended they planned to make and sell the rape/torture video, the victim referred to breast feeding their child and actually used the child's name in the video. (*Id*. at 129-30). Furthermore, the video corroborated the victim's testimony that she was breastfeeding when the video was recorded in contradiction to Petitioner's trial testimony. (*Id*. at 130). Consequently, Petitioner has not established that prejudice resulted from counsel's

failure to impeach the victim regarding the issues referenced *supra*. Accordingly, this ground is denied.

### vii.    Subpart g

Petitioner asserts counsel rendered ineffective assistance by failing to object when the State elicited false testimony from the victim. (Doc. 1 at 17). Specifically, Petitioner complains the victim lied when she testified her toes were barely touching the ground, she was able to get the knife to fall out of her vagina, and Petitioner put at least four golf balls in her vagina. (*Id*.).

Petitioner raised this ground in his first Rule 3.850 motion. The state court denied relief pursuant to *Strickland*. (Doc. 15-14 at 77). The state court reasoned that the jury was able to decide if the victim's testimony regarding the offenses coincided with the events depicted on the video. (*Id*.).

Petitioner has not established that the state court's denial of this ground is contrary to, or an unreasonable application of, *Strickland*. As discussed *supra*, the jury watched the video and was able to assess the credibility of the victim in light of it. To the extent the victim's testimony was contradicted by the video, the jury would have known this after watching the video. Petitioner, therefore, has not demonstrated either deficient performance or prejudice. Accordingly, this ground is denied pursuant to § 2254(d).

### viii.    Subpart h

Petitioner maintains counsel rendered ineffective assistance by failing to object to inadmissible hearsay. (Doc. 1 at 17). In support of this ground, Petitioner complains that the victim testified about various statements made by Petitioner. (*Id*. at 17-18). Petitioner also contends counsel should have moved for a mistrial when the victim testified about an uncharged crime. (*Id*. at 18).

Petitioner raised part of this ground in his first Rule 3.850 motion. The state court denied relief pursuant to *Strickland*. (Doc. 15-14 at 77-78). The state court concluded that Petitioner's statements were admissible as a party opponent under section 90.803(18) of the Florida Statutes. (*Id.*).

Petitioner did not argue in the state court that counsel rendered ineffective assistance by failing to move for a mistrial based on the victim's testimony regarding an uncharged crime. Petitioner has not demonstrated an exception to the procedural default bar to overcome his failure to exhaust this portion of subpart h. Therefore, this portion of ground one, subpart h is procedurally barred from review. Alternatively, it is without merit. Petitioner has not established that prejudice resulted. The victim testified that Petitioner twisted and grabbed her breasts in the car on the way to her parents' home. (Doc. 28-2 at 86). The victim's single statement did not warrant a mistrial.

Petitioner also has not established that the state court's denial of this ground is contrary to, or an unreasonable application of, *Strickland*. Pursuant to section 90.803(18) of the Florida Statutes, statements made by a party are admissible against the party. Fla. Stat. § 90.803(18)(a) (2007). Therefore, counsel had no basis to object to the victim's testimony, and prejudice did not result from counsel's failure to do so. Accordingly, this ground is denied.

### ix.     Subpart i

Petitioner asserts counsel rendered ineffective assistance by failing to object to the prosecution's closing argument. (Doc. 1 at 18). According to Petitioner, the prosecutor made several improper statements that were not supported by the evidence, were hearsay, and expressed her personal opinion. (Doc. 1 at 18-20).

Petitioner raised this ground in his first Rule 3.850 motion. The state court denied relief pursuant to *Strickland*. (Doc. 15-14 at 78). The state court reasoned that the statements referenced

by the prosecutor were not hearsay, did not mischaracterize the evidence, and were permissible comments based on the evidence presented. (*Id.*).

The state court's denial of this ground is not contrary to, or an unreasonable application of, *Strickland*. The prosecutor's statements during closing argument were reasonable inferences that could be drawn from the evidence. "[A]n attorney is allowed to argue reasonable inferences from the evidence and to argue credibility of witnesses or any other relevant issue so long as the argument is based on the evidence." *Miller v. State*, 926 So. 2d 1243, 1254-55 (Fla. 2006) (citing *Craig v. State*, 510 So. 2d 857, 865 (Fla. 1987)). Counsel, therefore, was not deficient for failing to object to the prosecutor's statements.

Moreover, the trial judge instructed the jury that nothing the attorneys said was evidence and that only the evidence presented at trial could be considered in determining Petitioner's guilt. (Doc. 28-3 at 68, 152). Consequently, a reasonable probability does not exist that the outcome of the trial would have been different had counsel objected to the prosecutor's statements. Accordingly, this ground is denied pursuant to § 2254(d).

### x.　　Subpart j

Petitioner contends counsel rendered ineffective assistance by failing to request a hearing based on the State's failure to disclose exculpatory evidence and the victim's destruction of evidence. (Doc. 1 at 20). Petitioner complains that their home computer showed they had researched pornographic rape/torture movies and the victim removed "the evidence it contained" before police obtained it. (*Id*. at 20-21).

Petitioner raised this ground in his first Rule 3.850 motion. The state court determined that Petitioner failed to allege that the evidence from the computer would have been exculpatory or show that the State had custody of the computer or was responsible for its destruction. (Doc. 15-

14 at 79-80). The state court, therefore, concluded counsel was not ineffective for failing to seek dismissal of the charges on this basis. (*Id*. at 80).

The state court's denial of this ground is not contrary to, or an unreasonable application of, *Strickland*. "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). Petitioner has not shown that the police acted in bad faith in failing to keep the purported computer. Moreover, assuming the State had the computer, the victim deleted pornographic material before it was seized, and such could be proven, Petitioner has not demonstrated a reasonable probability exists that the outcome of the trial would have been different had counsel sought a hearing on the issue. The existence of pornography on the computer was not exculpatory nor would it have established that the victim consented to the offenses, even if it could be proven she downloaded the pornography. Therefore, prejudice did not result from counsel's failure to request a hearing on the issue. Accordingly, this ground is denied pursuant to § 2254(d).

### xi. Subpart k

Petitioner asserts counsel rendered ineffective assistance by failing to request a hearing to establish that the State failed to preserve pornographic videotapes of him and the victim. (Doc. 1 at 21). Petitioner notes that the victim destroyed the videotapes and the State should have known about them because he mentioned them in his jail phone calls, which were recorded and part of discovery. (*Id*. at 21-22).

Petitioner raised this ground in his first Rule 3.850 motion. The state court determined that Petitioner failed to allege that the State or its agents had custody of the tapes or destroyed them. (Doc. 15-14 at 79). The state court, therefore, concluded counsel was not ineffective for failing to

seek dismissal of the charges on this basis. (*Id*.).

The state court's denial of this ground is not contrary to, or an unreasonable application of, *Strickland*. There is no evidence that the police ever had the purported pornographic videotapes or knew about them. Petitioner has not shown that the police acted in bad faith in failing to preserve them. Additionally, during her deposition, the victim testified that prior to the offenses, she found and destroyed two videos that Petitioner secretly recorded of them having sex in their bedroom. (Doc. 8-2 at 43-48). There is no evidence that any other videos existed after the commission of the offenses. Consequently, counsel was not deficient for failing to request a hearing on the issue of the State's failure to preserve other pornographic videos nor did prejudice result from counsel's failure to do so. Accordingly, this ground is denied pursuant to § 2254(d).

### xii.    Subpart l

Petitioner asserts counsel rendered ineffective assistance by failing to request a hearing based on the police's failure to collect evidence. (Doc. 1 at 23). Specifically, Petitioner complains the police failed to collect eleven beer cans, a candle, and a pair of stockings tied to a cord. (*Id*.).

Petitioner raised this ground in his first Rule 3.850 motion. The state court denied relief. (Doc. 15-14 at 80). The state court concluded Petitioner failed to show bad faith on the part of the State and counsel, therefore, had no basis to seek dismissal of the charges. (*Id.*).

The state court's denial of this ground is not contrary to, or an unreasonable application of, *Strickland*. As noted previously, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Youngblood*, 488 U.S. at 58. Petitioner has not shown that the police acted in bad faith by failing to collect the aforementioned items. Furthermore, Petitioner has not established that a reasonable probability exists that the outcome of the trial would have been different had counsel

sought a hearing on the issue. None of these items would have exculpated Petitioner. Counsel, therefore, was not deficient for failing to request a hearing on the issue nor did prejudice result from counsel's failure to do so. Accordingly, this ground is denied pursuant to § 2254(d).

### xiii.    Subpart m

Petitioner maintains counsel rendered ineffective assistance by failing to properly question the victim regarding Count Five and to seek a judgment of acquittal of this count. (Doc. 1 at 24). Petitioner argues that the information charged him with committing the offense while the victim was bound. (*Id*.). However, according to Petitioner, the victim testified at her deposition that it may have occurred after she was untied. (*Id*.). Petitioner further complains that there was no evidence that the bottle inserted into the victim's vagina contained Tabasco Sauce. (*Id.* at 24).

Petitioner raised this ground in his first Rule 3.850 motion. The state court denied relief. (Doc. 15-14 at 80-82). The state court concluded that it was not necessary for the State to show the contents of the bottle, that sufficient evidence was presented for the jury to convict Petitioner of the offense, and counsel was not ineffective for failing to move for a judgment of acquittal. (*Id.*).

Petitioner has not established deficient performance or prejudice. The information charged Petitioner in Count Five with sexual battery by "placing a bottle of Tabasco Sauce" into the victim's vagina. (Doc. 15-1 at 12). However, before the close of the State's case, the trial court allowed the State to amend the information to reflect a Tabasco Sauce bottle was inserted into the victim's vagina, and the jury was instructed accordingly. (Doc. 28-3 at 47, 140). Therefore, the contents of the bottle were irrelevant. Nevertheless, the victim testified that she went to the hospital because she had an intense burning sensation in her vaginal area, and a bottle of Tabasco Sauce was removed from her vagina at the hospital. (Doc. 28-2 at 94-95). Assuming, therefore, that the

content of the bottle was relevant to the charge, a determination not made by the Court, evidence was presented from which the jury could have concluded the bottle contained Tabasco Sauce.

Furthermore, at trial, the victim testified she did not know that Petitioner had inserted the bottle into her vagina until she went to the hospital. (Doc. 28-2 at 95). Similarly, during her deposition, the victim testified she did not know when Petitioner placed the bottle into her vagina; however, she said it was possible Petitioner did it after they returned to the boat because he complained that it burned when he assaulted her again. (Doc. 8-2 at 50-51). The victim explicitly said she did not know when Petitioner put the bottle in her vagina. (*Id*. at 51). Therefore, counsel was not deficient for failing to ask the victim questions regarding when the bottle was placed in her vagina or for failing to move for a judgment of acquittal of Count Five. Additionally, a reasonable probability does not exist that the outcome of the trial would have been different had counsel done so. Accordingly, this ground is denied pursuant to *Strickland*.

xiv.    **Subpart n**

Petitioner asserts counsel rendered ineffective assistance by failing to move to dismiss Count Five and to disqualify the trial judge. (Doc. 1 at 25). In support of this ground, Petitioner argues that the trial judge instructed the State to amend to charge to reflect a "Tabasco Sauce bottle" versus a "bottle of Tabasco Sauce". (*Id*. at 26). Petitioner further argues that the amendment of the information prejudiced his defense because there was no proof there was Tabasco Sauce in the bottle. (*Id*. at 25-26).

Petitioner raised this ground in his first Rule 3.850 motion. The state court denied relief. (Doc. 15-14 at 82-83). The state court reasoned that "[r]egardless of how the charge was worded, the jury could conclude either that the bottle contained Tabasco and injured the victim, or that, even if it did not contain sauce, the insertion of the bottle was done while [Petitioner] was using

great physical force to inflict bodily harm on the victim." (*Id.*). The state court concluded that the amendment of the information did not prejudice Petitioner. (*Id.*).

Petitioner has not established deficient performance or prejudice. Pursuant to Florida law, "the state may substantively amend an information during trial, even over the objection of the defendant, unless there is a showing of prejudice to the substantial rights of the defendant." *State v. Anderson*, 537 So. 2d 1373, 1375 (Fla. 1989). Petitioner has not demonstrated that the amendment of the information from a "bottle of Tabasco Sauce" to a "Tabasco Sauce bottle" resulted in prejudice. Petitioner was on notice that the information charged him with sexual battery by placing a bottle into the victim's vagina, regardless of the descriptor of the bottle. Moreover, as discussed *supra*, the contents of the bottle were irrelevant because it was the placement of the bottle itself into the victim's vagina that was an element of the offense. Nevertheless, evidence was presented from which the jury could have concluded the bottle contained Tabasco Sauce.

Likewise, no basis existed to recuse the trial judge. Under Florida law,

> "A [recusal] motion is legally sufficient if it shows that the party making the motion has a well-grounded fear that he or she will not receive a fair trial from the presiding judge." *Barwick v. State,* 660 So.2d 685, 691 (Fla.1995), *cert. denied,* 516 U.S. 1097, 116 S. Ct. 823, 133 L.Ed.2d 766 (1996); § 38.10, Fla. Stat. (1995); Fla. R. Jud. Admin. 2.160. The motion "must be well-founded and contain facts germane to the judge's undue bias, prejudice, or sympathy." *Jackson v. State,* 599 So.2d 103, 107 (Fla.), *cert. denied,* 506 U.S. 1004, 113 S. Ct. 612, 121 L.Ed.2d 546 (1992).

*Williams v. State*, 689 So. 2d 393, 395 (Fla. 3d DCA 1997). The trial judge simply asked the parties if the term "Tabasco Sauce bottle" was more accurate, told the State it did not have to change the wording of the information, and asked the State what it wished to do. (Doc. 28-3 at 46-47). Nothing in this interaction demonstrated any undue bias, prejudice, or sympathy by the judge for either party. Counsel, therefore, had no basis on which to move to recuse the judge, and no prejudice resulted from counsel's failure to do so. Accordingly, this ground is denied.

### xv.    Subpart o

Petitioner contends counsel rendered ineffective assistance by failing to renew the motion for judgment of acquittal after the jury returned the verdict. (Doc. 1 at 27). Petitioner maintains counsel should have argued that the State failed to disprove every reasonable hypothesis of the defense and the evidence was insufficient to warrant convictions. (*Id.*).

Petitioner raised this ground in his first Rule 3.850 motion. The state court denied relief. (Doc. 15-14 at 83-84). The state court concluded there was evidence to support each charge, the trial court had denied the defense's motion for judgment of acquittal at the close of the State's case and the defense's case, and no reason existed to believe the motion would have been granted on a third request. (*Id.*).

The state court's denial of this ground is neither contrary to, nor an unreasonable application of, *Strickland*. Ample evidence was presented to support the jury's verdict. Counsel moved for a judgment of acquittal twice, and the motions were denied. (Doc. 28-2 at 261-65; Doc. 28-3 at 42). Counsel, therefore, had no reason to request a judgment of acquittal after the jury returned the verdict, and prejudice did not result from counsel's failure to do so. Accordingly, this ground is denied pursuant to § 2254(d).

### xvi.    Subpart p

Petitioner asserts counsel rendered ineffective assistance by failing to object to the admission of the videotape. (Doc. 1 at 27-28). According to Petitioner, the videotape was not properly authenticated by the victim before it was admitted into evidence. (*Id.*). Petitioner complains that as a result, counsel was unable to question the victim about the contradictions in her testimony and the videotape. (*Id.*).

Petitioner raised this ground in his first Rule 3.850 motion. The state court denied relief

pursuant to *Strickland*. (Doc. 15-14 at 84). The state court reasoned that the videotape was properly authenticated, and counsel's failure to object to the admission of the tape did not result in prejudice. (*Id.*).

The state court's denial of this ground is not contrary to, or an unreasonable application of, *Strickland*. The videotape was properly authenticated. First, the victim identified the videotape as the one taken from the camera on the date of the incident that she gave to police, and Agent Buggs testified that the victim gave him the videotape the night of the incident and he had retained custody of it. (Doc. 28-2 at 90, 184-85). The videotape was then admitted into evidence. (*Id.*). Furthermore, counsel had an opportunity to question the victim about the videotape when the defense called her as a witness. (*Id.* at 272-300). Therefore, counsel had no basis on which to object to the admission of the videotape, and prejudice did not result from counsel's failure to do so. Accordingly, this ground is denied pursuant to § 2254(d).

### xvii.    Subpart q

Petitioner maintains counsel rendered ineffective assistance by failing to call Dennis and Sharon Pogar to testify. (Doc. 1-1 at 1-2). Petitioner asserts that these witnesses would have testified that Petitioner had a reputation for being a loving father and the victim had a reputation for being a bad mother and a liar. (*Id.*). Petitioner also contends that they could have testified they saw the victim shortly after the offenses at Petitioner and the victim's home and regarding where the victim parked her car at the canal. (*Id.* at 2).

Petitioner raised this ground in his first Rule 3.850 motion. The state court denied relief. (Doc. 15-14 at 85). The state court reasoned that general good character evidence was not relevant to whether Petitioner sexually battered his wife in private. (*Id.*). The state court further reasoned that the victim's reputation as a mother was not admissible because it did not relate to her

reputation for honesty and whether the victim went to her house after the offenses was irrelevant. (*Id.*). With respect to where the victim parked her car, the state court noted that Kenny Mullins ("Mullins") testified regarding the location and distance of the canal and surrounding area. (*Id.*). The state court concluded, therefore, that prejudice did not result from counsel's failure to call these witnesses. (*Id.*).

The state court's denial of this ground is not contrary to, or an unreasonable application of, *Strickland*. First, evidence that Petitioner was a good father or the victim was a bad mother was not relevant as neither was on trial for their parenting abilities. As to the distance from where the victim parked at the canal versus where the canoe was placed in the canal, Petitioner, the victim, and Mullins testified about these matters. Finally, to the extent the Pogars could have testified about the victim's reputation for dishonesty or that the victim went home after the offenses, Petitioner has not established a reasonable probability exists that the outcome of the trial would have been different had they done so. The victim's testimony was largely corroborated by the videotape of the offenses. The jury was able to view the video and assess the victim's credibility in light of it. Consequently, prejudice did not result from counsel's failure to call these witnesses. Accordingly, this ground is denied pursuant to § 2254(d).

**xviii.   Subpart r**

Petitioner asserts counsel rendered ineffective assistance by failing to move for a new trial. (Doc. 1-1 at 2). According to Petitioner, counsel should have sought a new trial based on the sleeping juror, prosecutorial misconduct, and insufficiency of the evidence. (*Id.*).

Petitioner raised this ground in his first Rule 3.850 motion. The state court denied relief. (Doc. 15-14 at 86). The state court determined that none of the bases set forth for a new trial warranted relief. (*Id.*).

The state court's denial of this ground is not contrary to, or an unreasonable application, of *Strickland*. As discussed in subparts a through r, counsel was not ineffective in relation to these grounds. Likewise, a reasonable probability does not exist that the outcome of the trial would have been different had counsel moved for a new trial on the substantive bases set forth in these grounds. Accordingly, this ground is denied pursuant to § 2254(d).

### xix.    Subpart s

Petitioner contends that the cumulative effect of counsel's errors deprived him of his right to a fair trial. (Doc. 1-1 at 3). Petitioner raised this ground in his first Rule 3.850 motion. The state court denied relief because Petitioner's grounds of ineffective assistance of counsel were not meritorious. (Doc. 15-14 at 86).

"The Supreme Court has not directly addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim." *Forrest v. Florida Dep't of Corr.*, 342 F. App'x 560, 564 (11th Cir. 2009). The Supreme Court has held, however, in relation to a claim of ineffective assistance of counsel, that "'there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt.'" *Id.* (quoting *United States v. Cronic,* 466 U.S. 648, 659 n. 26 (1984)).

Petitioner has not established counsel rendered ineffective assistance in any of his grounds. As explained by the Eleventh Circuit Court of Appeals, "[w]hile the prejudice inquiry should be a cumulative one as to the effect of all of the failures of counsel that meet the performance deficiency requirement, only the effect of counsel's actions or inactions that do meet that deficiency requirement are considered in determining prejudice." *Evans v. Sec'y, Fla. Dep't of Corr.,* 699 F.3d 1249, 1269 (11th Cir. 2012). Consequently, because Petitioner has not demonstrated any

deficient performance or prejudice, his claim of cumulative error fails. *See also Borden v. Allen*, 646 F.3d 785, 823 (11th Cir. 2011) ("Because Borden has not sufficiently pled facts that would establish prejudice—cumulative or otherwise—we decline to elaborate further on [a cumulative-effect ineffective assistance of counsel claim] for fear of issuing an advisory opinion on a hypothetical issue."). Accordingly, this ground is denied pursuant to § 2254(d).

**B.    Ground Two**

**i.    Subpart a**

Petitioner asserts appellate counsel rendered ineffective assistance by failing to argue Petitioner was not present at his arraignment. (Doc. 1-1 at 4-5). According to Petitioner, someone other than himself was arraigned at his arraignment and entered a plea of not guilty. (*Id.* at 5).

Petitioner raised this ground in a state habeas petition. The Fifth DCA summarily denied relief. (Doc. 15-10 at 39).

Criminal defendants have the right to effective counsel on appeal. *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984). "Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under *Strickland.*" *Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir. 2009) (citing *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991)). In considering appellate counsel's performance, "the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue." *Id.* (quoting *Heath*, 941 F.2d at 1130-31).

Petitioner has not established that the state court's denial of this ground is contrary to, or an unreasonable application of, clearly established federal law. Pursuant to Florida law, "[n]either a failure to arraign nor an irregularity in the arraignment shall affect the validity of any proceeding in the cause if the defendant pleads to the indictment or information on which the defendant is to be tried or proceeds to trial without objection to such failure or irregularity." Fla. R. Crim. P.

3.160(b). Petitioner did not object to his purported absence from his arraignment. Consequently, appellate counsel had no reason to raise this meritless issue, and prejudice did not result from counsel's failure to do so. Accordingly, this ground is denied pursuant to § 2254(d).

### ii.    Subpart b

Petitioner maintains appellate counsel rendered ineffective assistance by failing to argue that the State failed to collect, preserve, and disclose exculpatory evidence. (Doc. 1-1 at 5). In support of this ground, Petitioner relies on the evidence noted in ground one, subpart j *supra*, namely a computer. (*Id.*).

Petitioner raised this ground in a state habeas petition. The Fifth DCA summarily denied relief. (Doc. 15-10 at 39).

Petitioner has not established that the state court's denial of this ground is contrary to, or an unreasonable application of, clearly established federal law. As discussed *supra*, there is no indication that the police had the computer, destroyed any evidence, or acted in bad faith in failing to keep the purported computer. Furthermore, this issue was not preserved for appeal in the trial court, and Petitioner has not demonstrated it rises to the level of fundamental error. Therefore, appellate counsel was not deficient for failing to raise this issue nor did prejudice result from counsel's failure to do so. *See Rodriguez v. State*, 919 So. 2d 1252 (Fla. 2005) (holding that appellate counsel is not ineffective for failing to raise an issue not preserved in the trial court, unless the issue rises to the level of fundamental error). Accordingly, this ground is denied pursuant to § 2254(d).

### iii.    Subpart c

Petitioner contends appellate counsel rendered ineffective assistance by failing to argue that the trial judge improperly directed the State to amend Count Five in order to prove the

elements of the offense. (Doc. 1-1 at 5-6). In support of this ground, Petitioner relies on the arguments raised in ground one, subpart n *supra*. (*Id*.).

Petitioner raised this ground in a state habeas petition. The Fifth DCA summarily denied relief. (Doc. 15-10 at 39).

Petitioner has not established that the state court's denial of this ground is contrary to, or an unreasonable application of, clearly established federal law. As discussed *supra*, the trial judge asked the parties if the term "Tabasco Sauce bottle" was more accurate, told the State it did not have to change the wording in the information, and asked the State what it wished to do. Contrary to Petitioner's contention, the trial judge did not direct the State to amend Count Five. Moreover, the contents of the bottle were irrelevant because it was the placement of the bottle into the victim's vagina that was an element of the offense. Consequently, no prejudice resulted from the amendment of this count. Finally, this issue was not preserved for appeal in the trial court, and Petitioner has not demonstrated it rises to the level of fundamental error. Therefore, appellate counsel was not deficient for failing to raise this issue nor did prejudice result from counsel's failure to do so. Accordingly, this ground is denied pursuant to § 2254(d).

### iv.    Subpart d

Petitioner asserts appellate counsel rendered ineffective assistance by failing to argue that the prosecutor made improper statements in closing argument. (Doc. 1-1 at 6). Petitioner relies on the prosecutor's statements noted in ground one, subpart i. (*Id*).

Petitioner raised this ground in a state habeas petition. The Fifth DCA summarily denied relief. (Doc. 15-10 at 39).

Petitioner has not established that the state court's denial of this ground is contrary to, or an unreasonable application of, clearly established federal law. The prosecutor's statements during

closing argument were reasonable inferences that could be drawn from the evidence. In addition, the trial judge instructed the jury that nothing the attorneys said was evidence and that only the evidence presented at trial could be considered in determining Petitioner's guilt. Finally, this issue was not preserved for appeal in the trial court, and Petitioner has not demonstrated it rises to the level of fundamental error. Therefore, appellate counsel was not deficient for failing to raise this issue, and prejudice did not result from counsel's failure to do so. Accordingly, this ground is denied pursuant to § 2254(d).

> v. **Subpart e**

Petitioner asserts appellate counsel rendered ineffective assistance by failing to argue that the videotape was obtained via an illegal search and seizure. (Doc. 1-1 at 6-7). Petitioner did not raise this ground in the state court. Therefore, this ground is unexhausted and barred from review absent an exception.

Petitioner has not established cause or prejudice to overcome his procedural default. He also has not established actual innocence. Consequently, Petitioner has not demonstrated an exception to the procedural default bar. Accordingly, this ground is procedurally barred from review.

## C. **Ground Three**

Petitioner contends that his constitutional rights were violated by the illegal search and seizure of the videotape of the offenses. (Doc. 1-1 at 8-11). According to Petitioner, the victim and her father were acting as agents of the State when they retrieved the videotape from the car and gave it to police. (*Id*.).

Petitioner raised this ground in his second Rule 3.850 motion and in his motions for return of property. *See* Doc. Nos. 15-15 at 79-80; 15-16 at 1-7; 15-19 at 87; 15-20 at 1-36; 15-26 at 15-

23. The state court denied the claim in the Rule 3.850 motion as procedurally barred and dismissed both motions for return of property as an abuse of process. (Doc. Nos. 15-16 at 10-11; 15-20 at 47-51; 15-28 at 6-7). The Fifth DCA dismissed Petitioner's appeal of the Rule 3.850 order based on his voluntary dismissal and affirmed *per curiam* the dismissal of his motions for return of property. (Doc. Nos. 15-15 at 77; 15-16 at 56; 15-20 at 76). The state court denied this claim and dismissed the motions for return of property based on adequate and independent procedural grounds under state law. *See, e.g., Isley v. State*, 652 So. 2d 409, 411 (Fla. 5th DCA 1995) (affirming dismissal of collateral motions because they were an abuse of process); *Moore v. State*, 820 So.2d 199, 205 (Fla. 2002) (holding that a second or successive motion for post-conviction relief can be denied on the ground that it is an abuse of process if there is no reason for failing to raise the issues in the previous motion); *Boldender v. Dugger*, 564 So. 2d 1057, 1058 n. 1 (Fla.1990) (holding that issues which were raised on appeal or in the first post-conviction motion, or which could and should have been raised previously, were procedurally barred). As a result, this ground is procedurally barred from review by this Court absent an exception to the procedural default bar.

Petitioner has not demonstrated cause or prejudice to excuse the procedural default. Likewise, he has not shown the applicability of the actual innocence exception. A review of the record reveals that Petitioner is unable to satisfy either of the exceptions to the procedural default bar. Therefore, this ground is procedurally barred from review.[4]

---

[4] Alternatively, this ground is denied on the merits. The victim testified at trial that after the police arrived, she instructed her father to get the video camera containing the tape from her vehicle. (Doc. 28-2 at 88-89). The victim's father similarly testified that he got the video camera from the victim's car. (*Id.* at 160). An officer testified that the victim gave the police the videotape. (*Id.* at 184-85). The evidence establishes the victim had possession and ownership of the car and video camera. There is no evidence that the police directed the victim or her father to retrieve the videotape from the car. Consequently, the search and seizure of the car and videotape were not

### D.      Ground Four

Petitioner asserts that his constitutional rights were violated because a trial court staff attorney, who had a conflict of interest, continued to work on his post-conviction motions after a judge recused himself. (Doc. 1-1 at 12-17). According to Petitioner, the staff attorney may have known the victim or her mother although the staff attorney denies it. (*Id*. at 13).

Petitioner raised this ground in his fourth Rule 3.850 motion. The state court denied relief. (Doc. 15-19 at 52-54). The state court determined that Petitioner failed to show that the staff attorney was biased against him or had a conflict of interest when she worked on the case. (*Id*.).

Initially, the Court notes that the Eleventh Circuit Court of Appeals "has repeatedly held defects in state collateral proceedings do not provide a basis for habeas relief." *Carroll v. Sec',  Dep't of Corr.*, 574 F.3d 1354, 1365 (11th Cir. 2009). Therefore, Petitioner's contention that his state post-conviction proceeding was inadequate because a staff attorney with a conflict worked on his motions is not a cognizable habeas claim. *See, e.g., Spradley v. Dugger,* 825 F.2d 1566, 1567 (11th Cir. 1987) (holding that the state trial court's alleged errors in the Rule 3.850 proceedings did not undermine the validity of the petitioner's conviction; therefore, the claim went to issues unrelated to the cause of the petitioner's detention and did not state a basis for habeas relief).

Furthermore, Petitioner has not established that the state court's denial of this ground is contrary to, or an unreasonable application of, federal law. Petitioner's contention that the staff

---

unconstitutional. *See United States v. Matlock,* 415 U.S. 164, 170 (1974) ("[T]he consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared."); *see also United States v. Bomengo,* 580 F.2d 173, 175 (5th Cir. 1978) ("The Fourth Amendment proscribes only governmental action. A search by a private individual for purely private reasons does not raise Fourth Amendment implications.").

attorney may have known the victim or her mother is purely speculation and is conclusory. Moreover, as noted by the state court, the ultimate decision maker was the judge that signed each order, not the staff attorney. *See* Doc. 15-19 at 54. Therefore, any purported conflict by the staff attorney was harmless. Accordingly, this ground is denied.

### E.     Ground Five

### i.     Subpart a

Petitioner contends that juror misconduct occurred during the trial. (Doc. 1-1 at 18-20). In support of this ground, Petitioner maintains that after his trial, he received an affidavit from Jennifer Rowe ("Rowe") in which she attested that she spoke to two unknown jurors while the trial was occurring and one of the jurors said the case was "all over the news" and that Petitioner "did it." (*Id*.). Petitioner further notes that Rowe purportedly attested that one of the jurors told her that "his girlfriend's friend knew the alleged victim . . . and [the juror] had heard [the victim's] side of the 'whole story' through his girlfriend. . . ." (*Id*.).

Petitioner raised this ground in his fifth Rule 3.850 motion. The state court denied relief. (Doc. 15-23 at 24-25). The state court reasoned that the jurors were informed by the trial court multiple times that there was extended press coverage of the case. (*Id*. at 25). The state court further noted that Rowe did not attest that the juror's girlfriend had told him the victim's story. (*Id*.). Finally, the state court concluded that whether the jurors had been discussing the case and had reached a decision about Petitioner's guilt before deliberations inhered in the verdict and precluded questioning of the jurors under state law. (*Id*)

The state court's denial of this ground is not contrary to, or an unreasonable application of, clearly established federal law. Initially, the Court notes that Rowe did not submit an affidavit, but instead a letter containing what appears to be a notary stamp. *See* Doc. 15-21 at 39. The notary

stamp, however, does not appear to comply with the requirements of Florida law. *See* Fla. Stat. § 117.05(4) (2016) ("When notarizing a signature, a notary public shall complete a jurat or notarial certificate in substantially the same form as those found in subsection (13). The jurat or certificate of acknowledgment shall contain the following elements: . . . (b) The type of notarial act performed, an oath or an acknowledgment, evidenced by the words 'sworn' or 'acknowledged.'. . . . (f) The specific type of identification the notary public is relying upon in identifying the signer, either based on personal knowledge or satisfactory evidence specified in subsection (5)."). Moreover, Rowe did not indicate that the juror said that his girlfriend told him what the victim had told his girlfriend's friend. (*Id.*) Furthermore, the trial court advised the jurors throughout the trial that there was media coverage of the case. (Doc. 28-2 at 197, 230). Therefore, the jurors of course knew the case was publicized. Finally, Florida law prohibits questioning jurors about matters which inhere in the verdict. *See Sims v. State*, 444 So. 2d 922, 925 (Fla. 1983). In Florida, whether a juror engaged in premature discussion regarding guilt inheres in the verdict. *See Reaves v. State*, 826 So. 2d 932, 943 (Fla. 2002). Consequently, Petitioner was precluded from questioning the jurors as to this matter. *See Cole v. Crosby*, Case No. 5:05-cv-222-Oc-10GRJ, 2006 WL 1169536, *61 (M.D. Fla. May 3, 2006) ("[R]ules which prevent attorney interviews or other contact with jurors, or preclude juror testimony where the subject inheres in the verdict itself have repeatedly been applied in criminal cases and held constitutional."); *Sims v. Singletary*, 155 F.3d 1297, 1312-13 (11th Cir. 1998) (applying Florida rule that juror testimony is not relevant unless it concerns matters that do not essentially inhere in the verdict). Accordingly, this ground is denied pursuant to § 2254(d).

### ii.     Subpart b

Petitioner asserts that the victim told Angela Holloway ("Holloway") after the trial that she

wanted to have Petitioner arrested because Petitioner was cheating on her and she did not want to divorce him because they would have to share custody of the children. (Doc. 1-1 at 20-21). According to Petitioner, Holloway died a few months after telling him this information. (*Id*.).

Petitioner raised this ground in his fifth Rule 3.850 motion. The state court determined that the ground was procedurally barred and otherwise without merit because Holloway's statement was inadmissible hearsay. (Doc. 15-23 at 26-29).

The state court found this ground to be procedurally barred. Therefore, it is procedurally barred from review by this Court absent an exception to the procedural default bar. Petitioner has not demonstrated cause or prejudice to excuse the procedural default. Likewise, he has not shown the applicability of the actual innocence exception. A review of the record reveals that Petitioner is unable to satisfy either of the exceptions to the procedural default bar. Therefore, this ground is procedurally barred from review.[5]

### iii.        Subpart c

Petitioner maintains he discovered after the trial that Mullins incorrectly testified that he was not aware of any other pornographic movies of Petitioner and the victim. (Doc. 1-1 at 21). According to Petitioner, Mullins told him after the trial that he had seen pictures of Petitioner and the victim making other bondage movies. (*Id*. at 22).

Petitioner raised this ground in his fifth Rule 3.850 motion. The state court determined that Mullins' purported recantation did not constitute newly discovered evidence. (Doc. 15-23 at 26-29).

The state court's denial of this ground is not contrary to, or an unreasonable application of,

---

[5] Alternatively, this ground is denied on the merits. Holloway's purported statement regarding what the victim told her is inadmissible hearsay.

clearly established federal law. "[T]he Supreme Court has held that '[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.'" *Brownlee v. Haley*, 306 F.3d 1043, 1065 (11th Cir. 2002) (quoting *Herrera v. Collins,* 506 U.S. 390, 400 (1993)). Petitioner does not assert an independent constitutional violation relating to Mullins' purported recantation, and therefore, he is not entitled to federal habeas relief. Furthermore, "evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable[.]" *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted)). Petitioner has not offered an affidavit from Mullins demonstrating he changed his trial testimony. Accordingly, this ground is denied pursuant to § 2254(d).

### iv.     Subpart d

Petitioner asserts that after his trial, David Allen ("Allen") notified him that two days before the offenses, the victim told Allen that she and Petitioner had made bondage movies in the past, they were about to make a "snuff" movie to sell to pay their mortgage, and she was thinking about divorcing Petitioner because of their financial problems and because he had cheated on her. (Doc. 1-1 at 23).

Petitioner raised this ground in his fifth Rule 3.850 motion. The state court determined that Allen's purported statements did not constitute newly discovered evidence. (Doc. 15-23 at 35-37).

The state court's denial of this ground is not contrary to, or an unreasonable application of, clearly established federal law. Petitioner does not assert an independent constitutional violation relating to Allen's purported statements, and therefore, he is not entitled to federal habeas relief.

Furthermore, "evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable[.]" *Ashimi*, 932 F.2d at 650. Petitioner has not offered an affidavit from Allen in either this Court or the state court demonstrating what testimony Allen would have given had he testified. Accordingly, this ground is denied pursuant to § 2254(d).

###　F.　Ground Six

Petitioner asserts another claim of actual innocence in his Reply to the Second Supplemental Response. (Doc. 38). In support of this ground, Petitioner filed an affidavit purportedly written by Tamara Parsons ("Parsons"), which Petitioner maintains he received in approximately May 2017. (Doc. 38 at 19). In the affidavit, Parsons, a resident of Titusville, Florida, purportedly attests that on the date of the offenses, she was fishing on a boat, heard screaming, and discreetly approached the area from which the screams emanated at which time she observed a male and female. (Doc. 38-1 at 2-3). The affidavit further states that while Parsons observed the couple, the female appeared to be directing the male as to what to do, was in control, and was not in danger. (*Id*. at 3). The affidavit provides that Parsons does not know Petitioner or the victim and did not come forward earlier because she did not know Petitioner had been arrested. (*Id*).

This ground was never raised in the state court. To the extent Petitioner attempts to overcome his procedural default of this ground because it is newly discovered, the Court concludes he has not demonstrated either cause and prejudice or actual innocence. Furthermore, Petitioner's claim of actual innocence based on Parson's affidavit is not a cognizable ground for federal habeas relief in the absence of an independent constitutional violation in his state criminal proceeding.

Finally, even if a claim of actual innocence was cognizable on habeas review, Petitioner has failed to demonstrate that he is actually innocent of the offenses. "An actual-innocence claim

must be supported 'with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial.'" *Milton v. Sec'y, Dep't of Corr.,* 347 F. App'x 528, 530-31 (11th Cir. 2009) (quoting *Schlup v. Delo,* 513 U.S. 298, 324 (1995)). To satisfy the "'threshold showing of innocence' justifying 'a review of the merits of the constitutional claims,' the new evidence must raise 'sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial.'" *Id.* at 531 (quoting *Schlup,* 513 U.S. at 317). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Id.* (quoting *Bousley v. United States,* 523 U.S. 614, 623 (1998)).

Parsons' purported affidavit is not reliable evidence. First, the affidavit was drafted approximately ten years after Petitioner was convicted. Second, there is no explanation as to how Parsons discovered that Petitioner and the victim were the couple she saw ten years earlier, that Petitioner had been convicted of offenses related to that incident, and how to contact Petitioner. Third, despite attesting that she is a resident of Titusville, Parsons' affidavit purportedly is notarized by someone from New York. Fourth, the affidavit contains the name and address of an attorney who has not entered a notice of appearance in this case and who did not sign the document. Most importantly, in the state court, Petitioner filed an affidavit purportedly written by the victim, which contained a notary stamp that was not affixed by the notary and that was found to be fabricated by Petitioner. (Doc. Nos. 15-28 at 4-5; 15-14 at 53-56). In sum, Petitioner has not presented new reliable evidence establishing he is actually innocent of the offenses. Accordingly, this ground is denied.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

### IV.    CERTIFICATE OF APPEALABILITY

This Court should grant an application for certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Sec'y Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009). When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a petitioner demonstrates "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*; *Lamarca*, 568 F.3d at 934. However, a prisoner need not show that the appeal will succeed. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Petitioner has not demonstrated that reasonable jurists would find the Court's assessment of the constitutional claims debatable or wrong. Moreover, Petitioner cannot show that jurists of reason would find this Court's procedural rulings debatable. Petitioner has failed to make a substantial showing of the denial of a constitutional right. Thus, the Court will deny Petitioner a certificate of appealability.

Accordingly, it is hereby **ORDERED** and **ADJUDGED:**

1. The Petition (Doc. 1) is **DENIED**, and this case is **DISMISSED with prejudice**.

2. Petitioner is **DENIED** a Certificate of Appealability.

3. The Clerk of the Court shall enter judgment accordingly and is directed to close this case.

**DONE AND ORDERED** in Orlando, Florida, this 21st day of June, 2017.



ROY B. DALTON JR.
United States District Judge

Copies to:
Christopher J. Wood
Counsel of Record